## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PTI SECURITIES & FUTURES, L.P. and<br>DANIEL HAUGH | ) | |
| | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Jury Demanded |
| ERNESTINE HANEY, NELLIE REE | ) | |
| BURKETT, SHARON E. GREENE, | ) | |
| REGIONS BANK, FIRST NATIONAL | ) | |
| BANK & TRUST, AND UNKNOWN | ) | |
| DEFENDANTS | ) | |
| | | |
| Defendants | | |

## COMPLAINT

**NOW COMES** the Plaintiff, **PTI SECURITIES & FUTURES, L.P., and DANIEL HAUGH** in his personal capacity and as principal of **PTI SECURITIES & FUTURES, L.P.,** by and through their Attorney Gregg Rzepczynski and Associates. Ltd. and for their Complaint states as follows:

## PARTIES

1. The Plaintiff, **PTI SECURITIES & FUTURES L.P.** is a registered broker-dealer with its principal place of business in the City of Chicago, County of Cook, and State of Illinois. The Plaintiff, **DANIEL HAUGH** is an owner and principal of **PTI SECURITIES & FUTURES L.P.**

2. Orrin Stevens, Jr. (hereinafter referred to as "Stevens") is a customer and account holder with Plaintiff, **PTI SECURITIES & FUTURES L.P.** at all subject times pertinent to this suit. Orrin Stevens, Jr. is a resident of the State of Texas.

3. The Defendant, Ernestine Haney is a resident of Benton, Louisiana.

1

4. The Defendant, Nellie Ree Burkett is a resident of Atmore, Alabama.

5. The Defendant, Sharon E. Greene is a resident of Half Moon (Clifton Park), New York.

6. Certain Unknown Defendants, potentially Jack Bruner and/or Jack Allgood were involved in the transactions.

7. The Defendant, Regions Bank is a banking and financial institution with a branch office operating in the City of Bossier City, State of Louisiana.

8. The Defendant, First National Bank & Trust is a banking institution and financial institution operating in the City of Atmore, Alabama.

9. Walmart is a national chain of retail stores which is headquartered in Bentonville, Arkansas. The Defendant, Walmart has a MoneyGram service available for individual customers to send money to recipient's around the country and/or the world.

## JURISDICTION

10. The parties are of diverse citizenship.

11. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12. Jurisdiction is proper according to the provisions of 28 U.S.C. 1332 (a).

## VENUE

12. The claims forming the basis of this Complaint, or a significant portion thereof, arose in that geographical area which is contained within the federal judicial district known as the Northern District of Illinois.

13. Venue is properly in this Court pursuant to the provisions of 28 U.S.C. 1391.

## FACTUAL BACKGROUND

14. Plaintiff, PTI Securities & Futures L.P. ("PTI") is registered as a broker dealer with the Illinois Secretary of State since March 16, 1992, and has the current address of 411 South Wells Street, Suite 900, Chicago, IL 60607.

15. Plaintiff, Daniel John Haugh ("Haugh"), has been a registered salesperson of Plaintiff, PTI since March 16, 1992. Mr. Haugh serves in the positions of the President of PTI since December of 1995); the Chief Compliance Officer ("CCO"), Financial and

2

Operations Principal ("FINOP"), FINRA Executive Representative, Anti-Money Laundering Compliance Officer ("AMLCO"), and Registered Option and Security Futures Principal ("ROSFP") of PTI since April 2007.

16. Since October 31, 2014, Plaintiff, Haugh has been registered as an investment adviser with Wells Street Advisers, LLC, and has a last known address of 10909 S. Longwood Drive, Unit 1, Chicago, IL 60643.

17. In or around November 2009, Orrin Stevens, Jr. ("Stevens") opened a Traditional IRA account with PTI. The listed salesperson on the IRA application was Plaintiff, Haugh. The application listed Stevens' social security number and date of birth. (The Social Security Number is redacted pursuant to Federal Rules). Stevens was the only applicant on the account and the application was signed by both Stevens and countersigned by Haugh. (See Exhibit "A")

18. Beginning on February 19, 2015, Plaintiff, Haugh began receiving emails which he believed to be sent from Stevens. The first email requested the balance in the Stevens account.

19. The Plaintiff, Haugh responded to the email on February 19, 2015, stating the current balance of Stevens' account and informed Stevens that his account balance was $151,355.69.

20. On February 19, 2015, Plaintiff, Haugh received an email in response requesting a wire transfer of $45,780.00 to an account held by Ernestine Haney, a Louisiana resident.

21. Defendant, Ernestine Haney's Account was at Regions Bank in Bossier, Louisiana and her Account No. was 0174636634. (See Exhibit "B").

22. Plaintiff, Haugh responded to the request by saying that Stevens needed to provide a signed copy of the wiring instructions and attached a distribution form to be filled out by Stevens. (See Exhibit "C").

23. On February 23, 2015, Plaintiff Haugh received another email from a person who he believed to be Stevens requesting the transfer $45,780 from Stevens's IRA account to Defendant, Haney's account which was unassociated with Stevens or his account. At such time, Plaintiff, Haugh received the signed authorization as sent on February 20, 2015 to the person posing as Stevens. (See Exhibit "D").

3

24. On February 23, 2015, Plaintiff, Haugh received the completed wire transmittal request form from Stevens' email address.

25. Plaintiff, Haugh was intentionally deceived by the Defendants or other unknown persons concerning the wiring of the funds. Indeed, Stevens had communicated with the Plaintiff, Haugh on numerous occasions in the case at bar through Stevens' e-mail address prior to this situation.

26. The completed wire transmittal request form was then forwarded to Plaintiff PTI's clearing firm, RBC Capital Markets who was the custodian of the funds, and the clearing firm processed the wire request on February 23, 2015 transferring $45,780 to the Defendant, Haney's third party account at Regents Bank in Bossier, Louisiana .

27. On March 4, 2015, the Plaintiff, Haugh received another email from the Stevens e-mail account. Attached to this email was a signed wiring instruction and a completed distribution form (both in PDF formats), requesting the transfer of $45,780.00 from Stevens' IRA account to a third party's bank account unassociated with Stevens or his account.

28. The transfer specifications requested a transfer of the funds to Defendant, Nellie Burkett's name to her account being held at the First National Bank & Trust in Atmore, Alabama. The Account Number for the account was 69713301. (See Exhibit "E").

29. Plaintiff, Haugh was intentionally deceived by the Defendants or other persons concerning the matter. Indeed Stevens had communicated with the Plaintiff, Haugh on numerous occasions in the case at bar through Mr. Stevens' e-mail address prior to this situation.

30. The second wire transfer request was forwarded to RBC Capital Markets, PTI's clearing firm. RBC Capital Markets was the custodian of the funds, and the clearing firm processed the wire request on March 4, 2015 transferring $45,780 to the third party account at First National Bank & Trust in Atmore, Alabama.

31. On March 10, 2015, the Plaintiff, Haugh received another email from what he believed to be Stevens.

32. Attached to this email was a signed wiring instruction and completed distribution form both in PDF formats, requesting the transfer $53,980 from Stevens' IRA account to a Bank account in the name of Defendant, Nellie Burkett. (See Exhibit "F").

4

33. Plaintiff, Haugh was intentionally deceived by the Defendants or other persons concerning the matter. Indeed, Stevens had communicated with the Plaintiff, Haugh on numerous occasions in the case at bar through Mr. Stevens' e-mail address prior to this situation.

34. The completed wire transmittal request form was then forwarded to the Plaintiff's PTI's clearing firm, RBC Capital Markets who was the custodian of the funds, and the clearing firm processed the wire request on March 10, 2015. However, later in the day on March 10, 2015, Plaintiff was notified by the clearing firm that the wire was rejected by the receiving bank, First National Bank & Trust. The Plaintiff then emailed what he believed to be Stevens to inform him of the rejection. (See Exhibit "G").

35. On March 11, 2015, Plaintiff, Haugh received another email with wiring instructions from a person who was identified as Stevens. Attached to this email were different signed wiring instructions, for $53,980 to be wired to a Bank account owned by Defendant, Sharon E. Greene. Her account was being held by TD Bank in Clifton Park, New York. The account number was 6251598513. (See Exhibit "H"). The transfer did not occur due to the vigilance of the Plaintiff.

37. At this point, Plaintiff, Haugh replied to the email asking Stevens to call to discuss the transaction of March 10, 2015. Plaintiff, Haugh did not receive a response to this email.

38. Plaintiff, Haugh called Stevens, using the telephone number on record with PTI, and he was told that the Stevens never sent any emails requesting distributions and that Stevens did not author the emails which came from Stevens's email address.

39. During this period of time, Stevens claimed he never had notice or reviewed any of the email communications which were exchanged between PTI and the third parties impersonating Stevens.

40. A subsequent investigation revealed that the Defendants along with several unknown individuals did use the account of Orrin Stevens, Jr., which allowed the Defendants and certain unknown individuals to send fraudulent e-mails and instructions to the Plaintiff, Haugh and his firm.

41. As a result of the incident in question, Orrin Stevens, Jr. filed three separate regulatory complaints against the Plaintiffs in the Securities Department of the Secretary State of Illinois, the Securities Department of the State of Texas and FINRA in the City of

5

Chicago concerning the alleged negligent handling of the Stevens account by the Plaintiffs.

42. As a result of the incident, the Plaintiffs were required to retain the services of an attorney in the State of Texas to defend themselves in the proceedings in that State. Based on information and belief the Plaintiffs were caused to expend over $20,000.00 in legal fees.

43. As a result of the incident, the Plaintiffs were required to retain the services of an attorney in the State of Illinois to defend the Plaintiffs in FINRA and before the Illinois Secretary of State. Based on information and belief the Plaintiffs were caused to expend over $40,000.00 in legal fees.

44. As a result of the incident, the Plaintiffs will be fined and sanctioned by the Illinois Secretary of State, Securities Department of the State of Texas as well as FINRA. In each case the parties have not reached a decision on the exact amount of the fines.

45. Based on information and belief both the Plaintiffs have suffered damage to their professional reputations which have made it impossible for them to retain new clients.

## COUNT I-CONSPIRACY TO COMMITT FRAUD
## DEFENDANTS, ERNESTINE HALEY and UNKNOWN DEFENDANTS

46. The Plaintiffs repeat and reallege the allegations in Paragraphs 1-45 as the allegations of Paragraphs 1-45 of Count I as though more fully set forth herein.

47. The Defendant, Ernestine Haney conspired with an individual known as "Michael Rotondi", "Jack Bruner" or "Jack Allgood" to fraudulently obtain funds belonging to Orrin Stevens, Jr. a customer of the Plaintiffs.

48. The Defendant, Ernestine Haney agreed to and participated in a scheme to transfer funds from Mr. Stevens to her account.

49. The Unknown Defendants agreed to and conspired with Defendant, Ernestine Haney to participate in a scheme to transfer funds from Mr. Stevens' account.

50. The Defendant was aware of the transfer from speaking with her co-conspirator.

51. The Defendant received the ill-begotten funds from Mr. Orrin Stevens, Jr., through the transfer instructions from the unknown person and Defendant identifying himself as

Orrin Stevens. The funds were transferred due to the actions of PTI and its President, Daniel Haugh and RBC on or about February 23, 2015.

52. The Defendant, Haney received said funds in her Bank Account # 0174636634 in the amount of $45,780.00.

53. The Defendant, Haney furthered the common scheme by disbursing these funds in furtherance of the fraud as to PTI and its President, Haugh.

54. The Defendant, Haney was instructed by the unknown Defendants to transfer funds from her personal account to bank accounts overseas.

55. The Plaintiff, PTI suffered damages in the amount of $45,780.00 due to the reimbursement of those monies to Mr. Stevens.

56. The Plaintiff, PTI and Plaintiff, Haugh suffered damages in the amount of at least $60,000.00 for attorney fees for defense of actions arising from this dispute.

**WHEREFORE,** the Plaintiffs, **PTI SECURITIES & FUTURES L.P. and DANIEL HAUGH** respectfully pray that this Court grant judgment against the Defendant, Ernestine Haney in the amount of $105,780.00 plus Court costs and any other relief the Court deems just.

## COUNT II-CONSPIRACY TO COMMITT FRAUD
## DEFENDANT, NELLIE BURKETT

57. The Plaintiffs repeat and reallege the allegations made in Paragraphs 1-56 of Count I as their allegations of Paragraph 1-56 of Count II as though more fully set forth herein.

58. The Defendant, Nellie Burkett conspired with an individual known as Jack Bruner or Jack Allgood to fraudulently obtain funds belonging to Orrin Stevens, Jr., a customer of the Plaintiffs.

59. The Defendant, Nellie Burkett agreed to and participated in a scheme to transfer funds from Mr. Stevens to her account.

60. The Unknown Defendants agreed to and conspired with Defendant, Nellie Burkett to participate in a scheme to transfer funds from Mr. Stevens' account.

61. The Defendant was aware of the transfer from speaking with her conspirator.

62. The Defendant received the ill-begotten funds from Mr. Orrin Stevens, Jr., through the transfer instructions from a person identifying himself as Orrin Stevens, Jr. The funds

were transferred due to the actions of PTI and its President, Daniel Haugh and RBC on or about March 10, 2015.

63. The Defendant, Burkett received said funds in her Bank Account # 69713301 in the amount of $45,780.00.

64. The Defendant, Haney furthered the common scheme by disbursing these funds in furtherance of the fraud as to PTI and its President, Haugh.

65. The Defendant, Haney was instructed by the unknown Defendants to transfer funds from her personal account to bank accounts overseas.

66. The Plaintiff, PTI suffered damages in the amount of $45,780.00 due to the reimbursement of those monies to Mr. Stevens.

67. The Plaintiff, PTI and Plaintiff, Haugh suffered damages in the amount of at least $60,000.00 for attorney fees for defense of actions arising from this dispute.

**WHEREFORE,** the Plaintiffs, **PTI SECURITIES & FUTURES L.P. and DANIEL HAUGH** respectfully pray that this Court grant judgment against the Defendant, Nellie Burkett in the amount of $105,780.00 plus Court costs and any other relief the Court deems just.

## COUNT III-CONSPIRACY TO COMMITT FRAUD
## DEFENDANT, SHARON E. GREENE

68. The Plaintiffs repeat and reallege the allegations made in Paragraphs 1-67 of Count II as their allegations of Paragraph 1-67 of Count III as though more fully set forth herein.

69. The Defendant, Sharon E. Greene conspired with unknown individuals to fraudulently obtain funds belonging to Orrin Stevens, Jr., a customer of the Plaintiffs.

70. The Defendant, Sharon E. Greene agreed to and participated in a scheme to transfer funds from Mr. Stevens to her account.

71. The Defendant was aware of the attempted transfer of funds from speaking with her conspirator.

72. While the Defendant, Greene did not receive the funds, the Defendant knew or should have known the scheme was based in fraud.

**WHEREFORE,** the Plaintiffs, **PTI SECURITIES & FUTURES L.P. and DANIEL HAUGH** respectfully pray that this Court grant judgment against the Defendant, Sharon E. Greene in an amount over $105,780.00 plus Court costs.

## COUNT IV-RICO ACT VIOLATIONS
## Burkett, Haney ad Other Unknown and Unnamed Persons

73. The Plaintiffs repeat and reallege the allegations made in Paragraphs 1-72 of Count III as Paragraphs 1-72 of Count IV as though more fully set forth herein. Defendant, Ernestine Haney is a person who exercised control over the property in question namely the first transfer of funds in the amount of $45,780.00.

74. The Defendant, Nellie Burkett is a person who exercised control over the property in question namely the second transfer of funds in the amount of $45,780.00.

75. Certain unknown and unnamed Persons also exercised control over the property in question and engaged in the enterprise to transfer funds by wire in both transactions.

76. The Defendants engaged in an enterprise which affected interstate commerce, namely the fraudulent and intentional action of transferring funds from the account of Mr. Stevens ending in the deposit of the funds in the personal accounts of each Defendant.

77. The Defendants activity was derived from a pattern of racketeering in that the Defendants accepted the wrongful deposit of money into their personal bank accounts and then disbursed those funds to unknown persons, who then transferred the funds to unknown persons overseas pursuant to the provisions of 18 U.S.C. Section 1961.

78. As a direct and proximate result of the actions taken by the Defendants, the Plaintiffs were damaged due to violations of 18 U.S.C. Section 1962.

79. The Plaintiffs, PTI and Haugh were forced to compensate Mr. Stevens in the amount of $93,000.00 for the transfer of funds.

**WHEREFORE,** the Plaintiffs, **PTI SECURITIES & FUTURES L.P. and DANIEL HAUGH** respectfully pray that this Court grant judgment against the Defendant, Ernestine Haney, and Nellie Burkett jointly and severally in the amount of $93,000.00 in actual damages, treble damages pursuant to the statute, and attorney's fees and Court costs.

## COUNT V-NEGLIGENCE REGIONS BANK

80. The Plaintiffs repeat and reallege the allegations made in Paragraphs 1-79 of Count IV as Paragraphs 1-79 of Count V as though more fully set forth herein.

81. Ernestine Haney was the holder of Account # 0174636634 located at the Defendant, Regions Bank.

82. Prior to February of 2015, the Defendant, Ernestine Haney was in communication with a Michael Rotondi. Mr. Rotondi requested that she forward the funds (taken from the Stevens account) to him in Egypt.

83. On and before February 23, 2015, the Defendant had a balance in her account of approximately $623.00. The balance increased to $46,403.66 on that date to funds transferred to her account. (See Exhibit "I").

84. Additional deposits of $15,656.20 were deposited on or about February 26, 2015. On that date the Defendant, Haney wrote a check in the amount of $15,000.00 to an unknown person and also withdrew $15,000.00 in funds from the Teller at the same Bank.

85. On February 27, 2015, the Defendant wrote two $10,000.00 checks on the same date to a person by the name of Mark Newachuka and to a person by the name of Martin Okunpolor. The checks were deposited in a Chase Account. (See Exhibits "J" and "K").

86. The Defendant also disbursed an additional $8,955.00 through withdrawals at the Bank as well as cashed checks at a local Walmart.

87. Regions Bank had a duty to monitor the withdrawals from the accounts specifically the $15,000.00 check issued by their Teller on February 26, 2015 and the two withdrawals by check of $10,000.00 per check on the same date by their Teller.

88. The Defendant was negligent in its failure to monitor and report the four large withdrawals as well as failure to comply with federal guidelines to report attempts to pay more than $10,000.00 in any one withdrawal or check.

89. The failure to monitor the Defendant's account directly led to the loss suffered by the Plaintiffs.

**WHEREFORE,** the Plaintiffs, **PTI SECURITIES & FUTURES L.P. and DANIEL HAUGH** respectfully prays that this Court grant judgment against the Defendant, Regions Bank in the amount of $45,780.00 plus Court costs and any other relief the Court deems just.

## COUNT VI-NEGLIGENCE-FIRST NATIONAL BANK OF ATMORE, ALABAMA

90. The Plaintiffs repeat and reallege the allegations made in Paragraphs 1-89 of Count V as Paragraphs 1-89 of Count VI as though more fully set forth herein.

91. Nellie Burkett was the holder of Account #69713301 located at the Defendant, First National Bank in Atmore, Alabama.

92. On March 4, 2015, the Defendant, Nellie Burkett received a deposit from Orrin Stevens, Jr., in the amount of $45,780.00.

93. The Defendant, Burkett in the next few days drained her account by withdrawing $25,000.00 in cash from the Bank.

94. With the $25,000.00 withdrawal in cash, Burkett sent the $25,000.00 (on Jack Bruner's instructions) to Omakoyua Alaba in Cairo, Egypt.

95. The Defendant used the services of the Walmart in Atmore, Alabama to transfer the funds by Moneygram to the above-stated individual.

96. The next day, the Defendant withdrew $20,000.00 from the account to again send money to another individual in Egypt. Pursuant to Mr. Bruner, the Defendant was instructed to send the money via Moneygram to Buhari Oluwaseum in Egypt.

97. The Defendant, Burkett took the money to Walmart in Atmore to once again send the Moneygram at that location.

98. First National Bank and Trust Company of Atmore First National Bank & Trust Company had a duty to monitor the withdrawals from the accounts specifically the $25,000.00 withdrawal on a date in March of 2015 and allowing the $20,000.00 withdrawal at a Teller on the next date.

99. The Defendant was negligent in its failure to monitor and report the two large withdrawals as well as failure to comply with federal guidelines to report attempts to pay more than $10,000.00 in any one withdrawal or check. The failure to monitor the Defendant's account directly led to the loss suffered by the Plaintiffs.

WHEREFORE, the Plaintiffs, **PTI SECURITIES & FUTURES L.P. and DANIEL HAUGH** respectfully pray that this Court grant judgment against the Defendant, First National Bank and Trust Company of Atmore in the amount of $45,780.00 plus Court costs and any other relief the Court deems just.

## COUNT VII-NEGLIGENCE WALMART

100. The Plaintiffs repeat and reallege the allegations made in Paragraphs 1-99 of Count VI as Paragraphs 1-99 of Count VII as though more fully set forth herein.

101. Defendant, Nellie Burkett withdrew $25,000.00 of funds sent to her from Orrin Stevens, Jr. and took it to the Defendant, Walmart at its location in Atmore, Alabama.

102. The Defendant took delivery of the funds through a cash transaction with Ms. Burkett in early March, 2014.

103. With the $25,000.00 withdrawal in cash, Burkett sent the $25,000.00 (on Jack Bruner's instructions) to Omakoyua Alaba in Cairo, Egypt.

104. The Defendant used the services of the Walmart in Atmore, Alabama to transfer the funds by Moneygram to the above-stated individual.

105. The very next day, the Defendant withdrew $20,000.00 from the account to again send money to another individual in Egypt. Pursuant to Mr. Bruner, the Defendant was instructed to send the money via Moneygram to Buhari Oluwaseum in Egypt.

106. The Defendant, Burkett took the money to Walmart in Atmore to once again send the Moneygram at that location.

107. Walmart in Atmore had a duty to monitor the transaction at their locations specifically the $25,000.00 withdrawal on a date in March of 2015 and allowing the $20,000.00 transaction on the next date.

108. The Defendant was negligent in its failure to monitor and report the two large withdrawals as well as failure to comply with federal guidelines to report attempts to pay more than $10,000.00 in any one withdrawal or check. The failure to monitor the Defendant's account directly led to the loss suffered by the Plaintiffs.

WHEREFORE, the Plaintiffs, **PTI SECURITIES & FUTURES L. P. and DANIEL HAUGH** respectfully pray that this Court grant judgment against the Defendant, Walmart in the amount of $45,780.00.

RESPECTFULLY SUBMITTED,
Gregg Rzepczynski & Associates, Ltd.

By

Gregg Rzepczynski
Attorney for Plaintiffs

Gregg Rzepczynski
Gregg Rzepczynski & Associates, Ltd.
175 W. Jackson Blvd. Ste. 240
Chicago, Illinois  60604
TEL: (312) 939-8028
FAX: (312) 922-1794
Email: AttyGMR@gmail.com
ARDC #GZ00348

# Application for Traditional, Roth, Rollover, & SEP IRA

| CHECK ONE: | | CHECK ONE: | | | |
|---|---|---|---|---|---|
| ☐ New ☑ Transfer | | ☐ Traditional | ☐ Roth | ☐ Rollover | ☐ SEP |

| FOR ROTH ACCOUNTS ONLY CHECK ALL BOXES THAT APPLY: | DCG&T USE ONLY: | |
|---|---|---|
| ☐ New ☐ Partial ☐ Total Conversion Amount $ _____ | G&T# | PLAN# |
| Conversion from my existing Delaware Charter IRA# _____ to a Roth IRA | | |
| Conversion from my existing account at _____ to a Roth IRA | SS# | CODE# |

### DEPOSITOR INFORMATION

| NAME | Orrin C Stevens | | | |
|---|---|---|---|---|
| ADDRESS | 4016 Candlenut Ln | | | |
| CITY Dallas | | STATE TX | ZIP 75244 | PHONE 972-241-5680 |
| DATE OF BIRTH 09/23/1934 | | SOCIAL SECURITY NUMBER ▓▓▓▓▓ | | |

### PRIMARY BENEFICIARY INFORMATION (If more than one Primary beneficiary is listed, make sure percentage is noted.)

| 1 NAME Mary Frances Stevens | PERCENTAGE 100 | RELATIONSHIP Spouse |
|---|---|---|
| DATE OF BIRTH 11/01/1938 | SOCIAL SECURITY NUMBER ▓▓▓▓▓ | |
| 2 NAME | PERCENTAGE | RELATIONSHIP |
| DATE OF BIRTH | SOCIAL SECURITY NUMBER | |

### CONTINGENT BENEFICIARY INFORMATION (Replaces Primary noted above if Primary predeceases the Contingent)

| 1 NAME Stevens Allocation Trust | PERCENTAGE 100 | RELATIONSHIP Trust |
|---|---|---|
| DATE OF BIRTH | SOCIAL SECURITY NUMBER | |
| 2 NAME | PERCENTAGE | RELATIONSHIP |
| DATE OF BIRTH | SOCIAL SECURITY NUMBER | |

Note: Community and marital property state laws may require your spouse to be named as at least a 50% primary beneficiary. Check with your legal adviser if you are impacted by these state laws.

### PARTICIPANT ACKNOWLEDGEMENT

I/We appoint Delaware Charter to serve as Trustee. By making this appointment I/We agree to and acknowledge the following:
I/We have read and understand the Trust Agreement, Disclosure Statement, and Schedule of Trustee Fees and agree to abide by the terms of the plan documents listed above.
I/We agree to pay all applicable fees described in the Schedule of Trustee Fees, which may be changed from time to time. Any fee changes will be communicated to me in writing by Delaware Charter. If I/We do not pay such Trustee fees directly, I/We authorize my/our investment executive as "custodian" to debit such Trustee fees from my retirement plan account.
I/We understand Delaware Charter is not an investment adviser and does not supervise or control my/our investment executive. Delaware Charter does not endorse any particular investment. I/We agree to use independent judgment in making my/our investment decisions.
I/We agree to resolve disputes with Delaware Charter through binding arbitration. See Article XII of the Trust Agreement.
I/We certify that the above social security number(s) are true and correct.

| APPLICANT'S SIGNATURE *Orrin C Stevens* | DATE 11/23/2009 |
|---|---|

### TO BE COMPLETED BY INVESTMENT EXECUTIVE

| INVESTMENT EXECUTIVE NAME AND FIRM DANIEL J. HAUGH PTI Securities | CLIENT'S ACCOUNT NUMBER 3605-0403 |
|---|---|
| ADDRESS 411 S Wells St., Suite 900 | | |
| CITY Chicago | STATE IL | ZIP 60607 | PHONE 312-663-3452 |

### APPROVAL OF TRUSTEE

The foregoing Application is hereby approved by the Trustee this_____ day of_____, 20____

Attest_____ by_____

A Welcome Folder containing PTI's Business Continuity Plan, copy of application, current privacy policy & company contact information was prepared and sent to this client by Sarah McNabb via U.S. mail on __11/7/2010__ *gm*

**EXHIBIT "A"**

# Securities Account Agreement

| Branch/Rep. | Sub No. | Account Number |
|---|---|---|
| SF01 | 083 | 3605-0403 |

## Account Information

Account Title: Orrin C Stevens    DELAWARE CHARTER R/c IRA

| Primary Owner ☑ Individual or ☐ Entity | % TIC | Co-Owner | % TIC |
|---|---|---|---|
| Name of Entity | | | |

| Primary Owner | Co-Owner |
|---|---|
| Name-First: Orrin    M.I. C | Name-First    M.I. |
| Last Name: Stevens | Last Name |
| Legal Address (No P.O. Box): 4016 Candlenut Ln | Legal Address (No P.O. Box) |
| City: Dallas    State: TX    ZIP Code: 75244 | City    State    ZIP Code |
| Mailing Address (If different than legal) | Mailing Address (If different than legal) |
| City    State    ZIP Code | City    State    ZIP Code |
| Home Telephone: 972-241-5680    Business Telephone | Home Telephone    Business Telephone |
| E-mail Address: orrinjr@sbcglobal.net | E-mail Address |
| Social Security/Tax ID # [redacted]  ☐ Tax-exempt ☐ Applied for ☐ Foreign    Birth Date 09 / 23 / 1934 | Social Security/Tax ID #  ☐ Tax-exempt ☐ Applied for ☐ Foreign    Birth Date / / |
| Drivers License/State ID/Passport#: 02529976    State/Country iss.: TX | Drivers License/State ID/Passport#    State/Country iss. |
| Issue Date    Exp. Date: 09-23-2013    Citizenship: USA | Issue Date    Exp. Date    Citizenship |
| Marital Status: Married    # of Dependents: 1    Dependents' Ages: 70 | Marital Status    # of Dependents    Dependents' Ages |
| Primary Owner's Employment Status ☐ Employed ☑ Retired ☐ Homemaker ☐ Student ☐ Unemployed | Co-Owner's Employment Status ☐ Employed ☐ Retired ☐ Homemaker ☐ Student ☐ Unemployed |
| Employer | Employer: PTI |
| Business Address | Business Address |
| City    State    ZIP Code | City: Orrin C Stevens    State: 4016 Candlenut Ln    ZIP Code |
| Occupation: Dallas    Business Nature    Years Employed: TX | Occupation: 75244    Business Nature: 972-241-5680    Years Employed: 09/23/1934 |

### Financials (Primary Owner)

| Annual Income | Net Worth | Liquid Net Worth |
|---|---|---|
| ☐ A $0-49,999 | ☐ A $0-49,999 | ☐ A $0-49,999 |
| ☑ B $50,000-99,999 | ☐ B $50,000-99,999 | ☐ B $50,000-99,999 |
| ☐ C $100,000-199,999 | ☐ C $100,000-199,999 | ☐ C $100,000-199,999 |
| ☐ D $200,000-499,999 | ☐ D $200,000-499,999 | ☐ D $200,000-499,999 |
| ☐ E $500,000-1 million | ☑ E $500,000-1 million | ☑ E $500,000-1 million |
| ☐ F $1 to 5 million | ☐ F $1 to 5 million | ☐ F $1 to 5 million |
| ☐ G $5 million or more | ☐ G $5 million or more | ☐ G $5 million or more |

Experience (Years): Stock: [illegible] Bonds: [illegible] Options: 11/01/1938    Tax Bracket: %

### Financials (Co-Owner)

| Annual Income | Net Worth | Liquid Net Worth |
|---|---|---|
| ☐ A $0-49,999 | ☐ A $0-49,999 | ☐ A $0-49,999 |
| ☐ B $50,000-99,999 | ☐ B $50,000-99,999 | ☐ B $50,000-99,999 |
| ☐ C $100,000-199,999 | ☐ C $100,000-199,999 | ☐ C $100,000-199,999 |
| ☐ D $200,000-499,999 | ☐ D $200,000-499,999 | ☐ D $200,000-499,999 |
| ☐ E $500,000-1 million | ☐ E $500,000-1 million | ☐ E $500,000-1 million |
| ☐ F $1 to 5 million | ☐ F $1 to 5 million | ☐ F $1 to 5 million |
| ☐ G $5 million or more | ☐ G $5 million or more | ☐ G $5 million or more |

Experience (Years): Stock: 100 Bonds: [illegible] Options: Spouse    Tax Bracket: %

## Substitute Internal Revenue Service Form W-9

Under penalties of perjury, I certify (1) that the number shown on this form is my correct social security or taxpayer identification number and (2) that I am not subject to backup withholding because I am exempt from backup withholding or I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding and (3) I am a U.S. person (including a U.S. resident alien). (I must cross out item (2) above if I have been notified by the IRS that I am currently subject to backup withholding and I have failed to report all interest and dividends on my tax return.)

_Orrin C Stevens_
Primary Owner's Signature

SEE ADDITIONAL TERMS AND CONDITIONS.
Cleared through Mesirow Financial, Inc. Member NYSE, SIPC

801-0305-015

## Securities Account Agreement (continued)

| Branch/Rep. | Sub No. | Account Number |
|---|---|---|
| SFQ1 | 053 | 3603 - 0403 |

### Investment Objective/Risk Tolerance

| | | | | |
|---|---|---|---|---|
| G | ☐ Income/Conservative Risk | L | ☐ Growth/Aggressive Risk | |
| H | ☐ Income/Moderate Risk | M | ☐ Total Return/Conservative Risk | |
| I | ☐ Income/Aggressive Risk | N | ☐ Total Return/Moderate Risk | |
| J | ☐ Growth/Conservative Risk | O | ☐ Total Return/Aggressive Risk | |
| K | ☑ Growth/Moderate Risk | | | |

**Description of Investment Objectives**

INCOME - Seeks regular and consistent returns on investments in the form of interest and dividend payments. Little consideration is given to capital appreciation.

GROWTH - Seeks capital appreciation through market price increases in investments. Dividend and interest returns may be important but are not primary considerations.

TOTAL RETURN - Seeks to combine both capital appreciation and income by investing in various types of securities and using various types of investment strategies. The structure of a growth and income portfolio is based on an investor's individual needs and risk tolerances as well as a consideration of market conditions and trends.

**Description of Risk Tolerance Levels**

CONSERVATIVE - Generally reflects an investor who has a low tolerance for risk. Preservation of capital is often a major consideration. Such an investor is willing to limit or forego capital appreciation opportunities or higher income returns in order to protect his or her investment capital.

MODERATE - Generally reflects an investor who has the financial resources and investment experience to accept an amount of risk in order to achieve capital appreciation or higher income returns. Such an investor can accept loss of capital in seeking to meet his or her investment goal.

AGGRESSIVE - Generally reflects an investor who seeks the most capital appreciation or a higher income return and who is financially able and willing to risk losing a substantial portion of investment capital to achieve his or her objectives. The aggressive investor may seek to maximize his or her total return through a broad range of investments and strategies that may include purchasing low-priced, low-rated, or volatile securities, using a high degree of leverage, or engaging in a high level of activity. Knowledge of investment strategies and investment experience are important considerations.

### Securities Industry Regulations Require That We Collect the Following Information:

Are you an officer, director, employee or agent of any insurance company or any securities firm or any stock exchange or the NASD or a buyer or member of the securities department of an institutional investor? Or are you a member of the immediate family of any such person?

☐ Yes ☑ No

If Yes, specify name and relationship or affiliation:

Are you now or have you ever been an officer or director of a public corporation or do you own 10% of any public corporation's securities?

☐ Yes ☑ No

If Yes, indicate corporation(s):

Are you related to any employee of the Introducing Broker/Dealer?

☐ Yes ☑ No    If Yes, specify relationship:                    Name of employee:

*OCS*    Primary Owner's Initials

### Money Market Sweep Authorization

☑ YES, I/We authorize the investment of funds between this account and the following money market account:

☑ PCS - Prime Cash Series                    ☐ IDS - US Prime Fund Class SS (for non-US citizens)
☐ GCS - Government Cash Series              ☐ FPO - Prime Obligations Fund Class SS (Managed Accounts)
☐ TCS - Treasury Cash Series
☐ MCS - Municipal Cash Series
☐ F__(State) Municipal Cash Trust-Cash Series CA, CT, FL, MA, NJ, NY, PA, OH, VA

*OCS*    Primary Owner's Initials

### SEC Rule 14B-1(C) Election Form

☐ A Client receives only annual reports and/or other balloting materials. Customer's name may be disclosed to the issuer.
☐ L Client receives all proxy mailings. Customer's name may be disclosed to the issuer.
☐ X Client receives all proxy mailings. Customer's name will not be disclosed to the issuer.
☑ Y Client receives only annual reports and/or other balloting materials. Customer's name will not be disclosed to the issuer.

*OCS*    Primary Owner's Initials

### Loan or Pledge of Securities (For Margin Customers Only)

YES, I/We want this to be a margin account.

I/we hereby authorize Mesirow Financial (MFI) to lend either to it self or to others any securities held by the broker in my/our margin account and to carry such property in its general loans. I/we will be charged interest in accordance with the terms described and shown in Item 13 on the following pages hereof.

Such property may be pledged, repledged, hypothecated or rehypothecated without notice to me/us, either separately or in common with other such property for any amounts due to MFI thereon or for a greater sum and MFI shall have no obligation to retain a like amount of similar property in its possession and control. By signing this agreement I/we acknowledge that: (1) The securities in my/our margin account may be loaned to MFI or loaned to others and (2) I/we have received a copy of this Agreement.

**SIGN HERE TO ACTIVATE A MARGIN ACCOUNT**

                                                                Primary Owner's Signature

I/we have received a copy of this agreement and have read, understand, and agree to abide by the terms and conditions of this customer agreement set forth herein and on the following pages hereof. This includes item 28 that describes the relationship between the Introducing Broker/Dealer and Mesirow Financial. This agreement contains a pre-dispute arbitration clause on page 6 and 7. Please note: The information that you provide to us in this form is essential information that we need to properly handle your account, and we will rely upon it during the course of our relationship. By executing this document where indicated below, you are representing to us the accuracy of the information provided. Please contact us promptly if any of this information changes.

### Signature(s) Required

| | | | |
|---|---|---|---|
| *Orum C Steven* | 11/23/09 | | |
| Primary Owner/Associated Client | Date | Co-Owner/Associated Client | Date |
| | | | |
| Co-Owner/Associated Client | Date | Co-Owner/Associated Client | Date |
| Investment Executive Signature | | Principal Approval | Date 12/8/09 |

This section will be completed by PTI.

SEE ADDITIONAL TERMS AND CONDITIONS.
Cleared through Mesirow Financial, Inc. Member NYSE, SIPC

801-0305-015

# Customer Agreement for Margin Account

In consideration of (a) you (Mesirow Financial, Inc.) agreeing to act as clearing broker which introduced the undersigned to you ("introducing broker"), (b) your accepting one or more accounts of the undersigned customer ("the undersigned") (whether such accounts are designated by name, number or otherwise), and (c) your agreeing to act as carrying broker in effecting transactions in securities or commodities, the undersigned agrees to the terms and conditions contained in this Agreement. The heading of each provision of this Agreement is for descriptive purposes only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to, money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of Paragraph 20 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. Applicable rules and regulations
All transactions in the undersigned's account shall be subject to the constitution, rules, regulations, customs and usages of the exchanges or market, and its clearing house, if any, where the transactions are executed by you or your agents, including its subsidiaries and affiliates. Also where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. Agreement contains entire understanding/assignment
This Agreement contains the entire understanding between the undersigned and you concerning the subject matter of this Agreement. The undersigned may not assign the rights and obligations hereunder without first obtaining your prior written consent.

### 3. Severability
If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement.

### 4. Waiver
Except as specifically permitted in this Agreement, no provisions of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in writing signed by you.

### 5. Delivery of securities
Without abrogating any of your rights under any other portion of this Agreement and subject to any indebtedness of the undersigned to you, the undersigned is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the undersigned's account.

### 6. Liens
All securities and other property of the undersigned in any account in which the undersigned has an interest shall be subject to a lien for the discharge of any and all indebtedness or any other obligation of the undersigned to you. All securities and other property of the undersigned shall be held by you as security for the payment of any such obligations or indebtedness to you in any account that the undersigned may have an interest, and you subject to applicable law may, at any time and without prior notice to the undersigned, use and/or transfer any or all securities and other property interchangeable in any account(s) in which the undersigned has an interest (except regulated commodity accounts).

### 7. Pledge of securities and other property
Within the limitations imposed by applicable laws, rules and regulations, all securities and other property of the undersigned may be pledged and repledged and hypothecated and rehypothecated by you from time to time, without notice to the undersigned, either separately or in common with such other securities and other property of other bona fide customers of yours, for any amount due to you in the undersigned's account(s). You may do so without retaining in your possession or under your control for delivery a like amount of similar securities or other property.

### 8. Interest
Debit balances of the account(s) of the undersigned shall be charged interest in accordance with your established custom, as disclosed to the undersigned pursuant to the provisions of Rule 10b-16 of the Securities Exchange Act.

### 9. Disclosures regarding liquidations and covering positions
The undersigned clearly understands that, notwithstanding a general policy of giving customers notice of a margin deficiency, you are not obligated to request additional margin from the undersigned in the event the undersigned's account falls below minimum maintenance requirements. More importantly, there may well be circumstances where you will liquidate securities and/or other property in the account without notice to the undersigned to ensure that minimum maintenance requirements are satisfied.

### 10. Liquidations and covering positions

You shall have the right in accordance with your general policies regarding margin maintenance requirements to require additional collateral and the liquidation of any securities, and other property whenever in your discretion you consider it necessary for your protection including in the event of, but not limited to: the failure of the undersigned to promptly meet any call for additional collateral; the filing of a petition in bankruptcy by or against the undersigned; the appointment of a receiver is filed by or against undersigned; an attachment is levied against any account of the undersigned or in which the undersigned has an interest or; the undersigned's death. In such event, you are authorized to sell any and all securities and other property in any account of the undersigned whether carried individually or jointly with others, to buy all securities or other property which may be short in such account(s), to cancel any open orders and to close any or all outstanding contracts, all without demand for margin or additional margin, other notice of sale or purchase, or other notice or advertisement each of which is expressly waived by the undersigned. Any such sales or purchases may be made at your discretion on any exchange or other market where such business is usually transacted or at public auction or private sale, and you may be the purchaser for your own account. It is understood a prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of your right to sell or buy without demand or notice as herein provided.

### 11. Margin

The undersigned agrees to maintain in all accounts with you such positions and margins as required by all applicable statutes, rules, regulations, procedures and custom, or as you deem necessary or advisable. The undersigned agrees to promptly satisfy all margin and maintenance calls.

### 12. Satisfaction of indebtedness

The undersigned agrees to satisfy, upon demand, any indebtedness, and to pay any debit balance remaining when the undersigned's account is closed, either partially or totally. The undersigned's account(s) may not be closed without you first receiving all securities and other property for which the account is short and all funds to pay in full for all securities and other property in which the account(s) are long.

### 13. Transactions and settlements

All orders for the purchase or sale of securities and other property will be authorized by the undersigned and executed with the understanding that an actual purchase or sale is intended and that it is the undersigned's intention and obligation in every case to deliver certificates or commodities to cover any and all sales or to receive any pay for certificates or commodities upon your demand. If you make a short sale of any securities and other property at the undersigned's direction or if the undersigned fails to deliver to you any securities and other property that you have sold at the undersigned's direction, you are authorized to borrow the securities and other property necessary to enable you to make delivery and the undersigned agrees to be responsible for any cost or loss you may incur, or the cost of obtaining the securities and other property if you are unable to borrow it. You are the undersigned's agent to complete all such transactions and are authorized to make advances and expend monies as are required.

### 14. Sales by customer

The undersigned understands and agrees any order to sell "short" will be designated as such by the undersigned, and that you will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time by the undersigned. By placing the order the undersigned affirms that he will deliver the securities on or before the settlement date.

### 15. Broker as agent

The undersigned understands that you are acting as the undersigned's agent, unless you notify the undersigned, in writing before the settlement date for the transaction, that you are acting as a dealer for its own account or as agent for some other person.

### 16. Confirmations and statements

Confirmations of transactions and statements for the undersigned's account(s) shall be binding upon the undersigned if the undersigned does not object, in writing, within ten days after receipt by the undersigned. Notice or other communications including margin and maintenance calls delivered or mailed to the address given below shall, until you have received notice in writing of a different address, be deemed to have been personally delivered to the undersigned whether actually received or not.

### 17. Binding upon customer's estate

The undersigned hereby agrees that this Agreement and all the terms thereof shall be binding upon the undersigned's heirs, executors, administrators, personal representatives and assigns.

### 18. Choice of laws

This agreement shall be deemed to have been made in the State of Illinois and shall be construed, and the rights and liabilities of the parties determined, in accordance with the laws of the State of Illinois.

### 19. Capacity to contract, customer affiliation

By signing below, the undersigned, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptances or other forms of commercial paper, and that the undersigned will promptly notify you in writing if the undersigned is now or becomes so employed. The undersigned also represents that no one except the undersigned has an interest in the account or accounts of the undersigned with you.

**20. Arbitration disclosures**
Arbitration is final and binding on the parties.

The parties are waiving their right to seek remedies in court, including the right to jury trial.

Pre-arbitration discovery is generally more limited than and different from court proceedings.

The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

The undersigned client agrees, and by carrying the account for the undersigned client Mesirow Financial, Inc. (collectively "you") agree, that all controversies which may arise between us or between the undersigned and the introducing broker concerning any transaction or the construction, performance of or breach of this or any other agreement between us pertaining to securities or other property, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration. Any arbitration shall be in accordance with the rules, then applying, of either the National Association of Securities Dealers, Inc., New York Stock Exchange, Inc., American Stock Exchange, Inc., or where appropriate, The Chicago Board of Options Exchange Inc. as I may elect. If I fail to make this election within five days of receipt of a written request from you to make such election, then I authorize you to make this election. The award of arbitrators, or the majority of them, shall be final and judgement upon the award rendered may be entered into any court, State or Federal, having jurisdiction. The individuals who shall serve on a particular arbitration panel shall be determined by the Director of Arbitration.

Upon the request of any party, any and all controversies which may arise between us concerning any transaction or the construction, performance of or breach of this or any other agreement between us pertaining to securities or other property, whether entered into prior, on, or subsequent to the date hereof may be submitted to nonbinding mediation.

I understand that this nonbinding mediation provision in no way limits my ability to file any claim in arbitration or limits the ability of the arbitrators to make any award. No person shall bring a putative class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until:
   (i) the class certification is denied;
   (ii) the class is decertified; or
   (iii) the customer is excluded from the class by the court.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any right under these agreements except to the extent stated herein.

**21. Loan or pledge of securities**
The undersigned hereby authorizes you to lend either to yourself or to others any securities held by you in the customer's margin account and to carry such property in its general loans. Such property may be pledged or repledged, hypothecated or rehypothecated either separately or in common with other such property for any amounts due to the broker thereon or for a greater sum, and you shall have no obligation to retain a like amount of similar property in your possession and control.

By signing this agreement the undersigned acknowledges that the securities in the undersigned's margin account may be loaned to you or loaned out to others.

**22.** The undersigned acknowledges that the undersigned has selected the introducing broker, that you will provide execution or clearing services, or both, for the undersigned solely as agent for and on the instructions of the introducing broker and that you are not responsible to provide investment advice or make recommendations to the undersigned, or determine the suitability for the undersigned of transactions which you are directed to carry out for the account of the undersigned by the undersigned's introducing broker. You may accept from the undersigned's introducing broker, without inquiry or investigation by you and carry out orders of the purchase and sale in the accounts of the undersigned of securities, commodities and other property, on margin or otherwise, and any other instructions concerning such accounts. You shall not be responsible or liable for any acts or omissions of the introducing broker or its employees. This Agreement contains a pre-dispute arbitration clause at Paragraph 20 of the Customer Agreement for Margin Account. I acknowledge I have received a copy of this agreement for my records.

Dated, _12/10/2009_      (x) _Orrin C Stevens_
                                          CUSTOMER SIGNATURE

Address _4016 CANDLENUT LN_     _ORRIN C STEVENS_
                                                    FULL NAME (TYPE OR PRINT)

_DALLAS_        _TX_       _3605-C403_
       CITY              STATE                   ACCOUNT NUMBER

*Customer Agreement for Margin Account*   page 3 of 4

# Disclosure of Credit Terms in Margin Transactions

Statement on opening a margin account at Mesirow Financial, Inc.

The basic facts governing a margin account cleared by Mesirow Financial Inc. on behalf of your introducing broker-dealer are as follows:

**1. Your account will be charged interest for any credit extended to you for the purpose of purchasing, carrying, or trading in any security.**

**2. Annual rate of interest which your account will be charged:**

You will be charged interest on the daily amount of credit extended to you (your margin balance). Your interest rate at all times, regardless of the amount of your margin balance, will be 2.0% above the current Base Rate. The Base Rate is an internally calculated rate set with reference to commercially recognized interest rates, industry conditions related to the extension of credit and general credit market conditions. Your rate of interest will change automatically and without prior notice with changes in the Base Rate. The interest charge will appear on your account statement. Please contact your Registered Representative to check the current Base Rate. We reserve the right negotiate the interest rate for credit extended to any customer and/or charge different categories of customers different rates. We will provide you at least 30 days' prior written notice to reflect changes in the interest rate, other than the Base Rate.

**3. Calculation of interest.**

Interest is accrued on the amount of credit extended to you on a daily basis. If you maintain a cash account with a free credit balance, along with a margin account, the free credit balance in your cash account will be used to reduce the amount of credit extended you in your margin account for interest calculation purposed. The effect will be an interest charge on the net amount of your indebtedness.

**4. Liens and additional collateral.**

Any securities in any of your accounts are collateral for any credit extended to you . A lien is created by the extension of credit to secure the amount of money owed to Mesirow Financial. Inc. (and/or your introducing broker-dealer). This means that in accordance with the terms of the Customer's Agreement which you have signed, securities in your account can be sold to reduce or to eliminate entirely any extension of credit in your account.

If there is a decline in the market value of your securities which are the collateral for the credit extended to you, it may be necessary for us to request additional margin. Ordinarily, a request for additional margin will be made when the equity in the account falls below 30 percent of the market value of all securities in the account. (The equity is the excess market value of the securities in the account over the amount of credit extended).

However, Mesirow Financial, Inc. retains the right to require additional margin any time it deems it desirable. These margin calls can be met by delivery of either additional securities or cash.

**5. Interest on short sales.**

Any and all short positions in your account will be kept "marked-to-the-market". This term simply means that on a daily basis the value of securities you sold short will be adjusted to reflect their current market value. These adjustments will increase or decrease the balance used in determining your interest charge. For example, if you sold short 100 XYZ for $5,000 (credit) and its current market value is $4,000, the balance used to determine your interest charge would be reduced by $1,000 thus decreasing the amount of interest you will be charged. If on the other hand, the current market value of XYZ is $6,000, the balance used to determine your interest charge would be increased by $1,000 thus increasing the amount of interest you will be charged.

**6. Nature of special charges.**

There are no special charges or other charges imposed on a margin account.

# Option Information Form    PTI Securities & Futures L.P.

| BRANCH/RR | ACCOUNT NO. | SUITABILITY CODE |
|---|---|---|

BRANCH/RR: S F Ø 1
ACCOUNT NO.: 3 6 C 5 - Ø 4 Ø 3

SUITABILITY CODE
☐ 1 Covered Writing Only          ☐ 1,2 Purchases
☐ 1,2,3 Spreads and/or long Straddles    ☐ 1,2,3,4 Equity Put Writing
☐ 1,2,3,4,5 Uncovered Call Writing/Index Put Writing and/or short Straddles*
☐ 1,2,3,4,5,6 Uncovered Index Options*

ACCOUNT TYPE    ☑ Cash    ☐ Margin

CUSTOMER NAME
Orrin C Stevens

HOME ADDRESS
4016 Candlenut Ln

CITY/STATE/ZIP
Dallas  TX  75244

SOCIAL SECURITY/TAX I.D. NO.
████████

NO. OF DEPENDENTS
1

AGE
75

☑ Married    HOME PHONE  972-241-5680    BUSINESS PHONE
☐ Single

EMPLOYMENT STATUS (CHECK ONE AND COMPLETE)
☐ Employed (name of company) _____
☐ Self-employed (name of company) _____
☑ Retired    ☐ Unemployed
Length of current employment: _____ Years

INCOME AND NET WORTH (ESTIMATED)
Annual income from all sources: 90,000 $
Net worth (excl. residence): $ 1,000,000
Liquid net worth: $ 1,000,000
(Cash, marketable securities, etc.)

SOURCES OF INFORMATION
☑ Customer    ☐ Customer refused to provide
☐ Other (specify) _____
Is R.R. registered in state where customer resides?  ☐ Yes  ☑ No

REQUIRED DOCUMENTS
☑ OCC disclosure documents  Date  11/23/09
☐
☐ Option agreement executed by customer _____

I (we) have received and read current Options Clearing Corporation disclosure documents and are aware of the special risks attendant to option trading. The statements contained on the form are accurate.

CUSTOMER SIGNATURE  Orrin C Stevens    DATE SIGNED  11/23/2009

SPOUSE'S OR OTHER SIGNATURE(S)  FOR JOINT ACCOUNT    DATE SIGNED

REGISTERED REPRESENTATIVE'S SIGNATURE    DATE SIGNED

The customer is required to review and verify the information on this form. If no corrections in writing are submitted to the firm, all information herein will be deemed correct. Customer is requested to advise firm of any material change(s) in this information.

---

Is this account to be operated by any person other than the owner?  ☒ Yes  ☐ No
If so, by whom?  PTI Securities

Relationship to client and investment experience: _____

Is Power of Attorney authorizing other person attached?  ☒ Yes  ☐ No

Number of BUY transactions in the past year:  50
OBJECTIVES
Number of BUY transactions in past year in speculative issues:  40

| TYPE OF SECURITY: | BUYS | SPECULATIVE BUYS |
|---|---|---|
| ☒ Stock | $ 10 | $ |
| ☐ Bond | $ | $ |
| ☐ Commodity | $ | $ |
| ☒ Options | $ | $ 40 |

Number of SHORT SALES in past two years:  0
Worth: $ _____

Number of uncovered options written in past two years: _____

CUSTOMER INVESTMENT
☐ Trading profits
☐ Income
☐ Long-term growth
☐ Safety of principal
☐ Other (specify)

Number of years investing in securities: 40
Number of years investing in options: 5
Dollar value of current portfolio: $ 300,000

Exercise Notification: A random method of allocation is used. Exercise assignment notices for option contracts are allocated among customer short positions pursuant to an automated procedure which randomly selects from among all customer short option positions, including positions established on the day of the assignment, those contracts which are subject to exercise. All short positions are liable for assignment at any time. A more detailed description of our random allocation procedure is available upon request.

---

TO BE COMPLETED PRIOR TO OPTION TRADING. ACCOUNT IS APPROVED FOR OPTION TRADING AS FOLLOWS:
☐ 1 Covered Writing Only    ☐ 1,2 Purchases    ☐ 1,2,3 Spreads and/or long Straddles    ☐ 1,2,3,4 Equity Put Writing
☐ 1,2,3,4,5 Uncovered Call Writing/Index Put Writing and/or short Straddles*    ☐ 1,2,3,4,5,6 Uncovered Index Options*

SIGNATURE OF REGISTERED OPTIONS PRINCIPAL    DATE 12/8/09

*Requires special disclosure document          Page 1 of 3



**PTI Securities & Futures L.P.**
411 S. Wells Street  Suite 900
Chicago, IL 60607

800.821.4968  www.PTISecurities.com

# Customer Option Agreement

This letter is written to you in connection with options (puts, calls, etc.) which you handle, purchase, sell, assign, transfer, exercise, endorse and/or clear for my account.

I will not enter an order for an option contract traded either on a national securities exchange or in the over-the-counter markets until after we have received and read the current disclosure document of The Options Clearing Corporation warning me of the duties, responsibilities and risks associated with options trading. I understand that I must comply with any applicable duties and responsibilities set forth in the disclosure document. I acknowledge that, upon request,
_____ (hereinafter referred to as "Broker") will supply me with a current copy of The Options Clearing Corporation prospectus. I understand that transactions in options are of a short-term nature and can entail a high degree of risk and financial loss. I understand and agreed to be bound by all the rules and regulations applicable to option transactions as promulgated by all national securities exchanges and associations and the Options Clearing Corporation (or any clearing corporation that is associated with any national securities exchange, association and/or marketplace). I realize that I will be charged a commission on an agency basis or a price markup or markdown on a principal basis each time a trade is effected and I am fully prepared financially to undertake the risks inherent in options transactions and to withstand any losses created thereby.

I further understand that all orders shall be executed and cleared, and that the account shall be handled, in accordance with the rules and regulations of all national securities exchanges and associations, and The Options Clearing Corporation (or any clearing corporation associated with any national securities exchange, association and/or marketplace). I agree that I will not, acting alone or in concert with others, exceed any option position limits, exercise limits or any other limits established by any clearing corporation, national securities exchange, association, and/or marketplace. I further understand that it may be necessary to report my position in a class or classes of options having the same underlying security and/or other underlying instrument(s) to the proper regulatory authority, indicating my name, address and social security number or tax identification number. Therefore, in order that I do not violate, acting alone or in concert with others, any of the aforementioned option positions or exercise limits, I agree to inform Broker of any option positions on the same side of the market and on the same underlying securities which are held at firms other than Broker.

In the event I do not satisfy, on a timely basis, your money or collateral calls, Broker is authorized in its sole discretion, and without notification to me, in compliance with the rules and regulations of the Securities and Exchange Commission, the Federal Reserve and any other regulatory body, to take any and all steps you deem necessary to protect itself (for any reason) in connection with options transactions for my account, including the right to buy and/or sell short, or short exempt for my account and risk any part or all of the securities and/or other underlying instrument(s) represented by options handled, purchased and/or endorsed by you for my account, or to buy for my account and risk any option as you may deem necessary or appropriate. The failure of Broker to take such steps shall not be deemed acquiescence in my failure to satisfy money of collateral calls and shall not preclude you from subsequently following the steps set forth above. I further agree that any and all expenses or losses incurred in this connection will be reimbursed by me. In the event I will effect margin transactions, I understand that my option transactions will be handled by Broker in the same manner as my general securities transactions under the "Customer's Agreement" which I have signed with you and is incorporated by reference herein.

I understand that I will bear full responsibility for taking action to exercise a valuable option. In this connection I understand that The Options Clearing Corporation, national securities exchanges and associations and/or marketplaces have established exercise cutoff times for the tender of exercise instructions and that my options will become worthless in the event that I do not deliver instructions by the expiration time set forth in the disclosure document (or according to the rules of any other option clearing corporation). In the absence of my notifying Broker to exercise a valuable option contract prior to the expiration date, I understand that Broker will use its best efforts to exercise the options contract on my behalf and that I will be given an opportunity to retain the underlying securities. I understand that I will be charged a commission on an agency basis or a price markup or markdown on a principal basis for this service in the event that I retain the underlying securities and/ or other underlying instrument(s). If I do not notify Broker to exercise a valuable option prior to the expiration date and Broker, for whatever reason, is unable to exercise such option on my behalf, I hereby agree to waive any and all claims for damage or loss which I might have at that time or any time thereafter against Broker arising out of the fact that the option was not exercised.

Page 2 of 3

If I write a call option contract without depositing the underlying security and/or other underlying instrument(s), I realize that my risk of loss is potentially unlimited. Notwithstanding this risk of loss, I agree to honor all assignments and deliver the underlying security and/or other underlying instrument(s) in the prescribed time to Broker and if I fail to deliver the underlying security and/or other underlying instrument(s) in the proper time, I designate Broker to act as my agent and buy in such security at the current market price so that I may honor my commitment to deliver. If I write a put option contract, I realize I will be required to purchase the underlying securities and/or other underlying instrument(s) at the exercise price in the event I have received notice of assignment. I agree to honor all assignments and pay the exercise price in the prescribed time to Broker and if I fail to make such payment in the proper time, I designate Broker to act as my agent and liquidate the underlying securities and/or other underlying instrument(s) at the market price so that I may honor my commitment. I also understand that my account will be debited for any loss and that Broker will charge me a commission on an agency basis or a price markup or markdown on a principal basis for these services; I agree to immediately pay all losses involved to Broker upon its request.

In order to induce you to effect transactions in Options for my account as I may request from time to time in order to provide you with reasonable grounds for believing that such transactions for my account are not unsuitable for me in light of my experience, knowledge, investment objectives, financial situation and needs, I have furnished to you accurate information concerning my experience, knowledge, investment objectives, financial situation and needs, and I agree that should there occur a substantial change in my investment objectives, financial situations and needs, I shall promptly so inform you in writing, registered mail postage prepaid, attention compliance department, and furnish to you such information with respect thereto as you may reasonably request.

The provisions of this Agreement shall be considered as supplementary to the Customer's Agreement which I have signed or may be asked to sign. Except as specifically amended by this Agreement, all of the terms and conditions thereof shall remain effective with respect to all open commitments in Options now carried for my account as well as those hereafter made. I understand that this Agreement cannot be amended without your prior written consent thereto.

This agreement shall insure to the benefit of your present firm and its successors and assigns in business, irrespective of any change or changes of any kind in the personnel thereof for any cause whatsoever.

This agreement shall be interpreted under the laws of the State of _USA_ .

Date _11/23/2009_     Signed _Orrin C Stevens_

NAME

_3605 - C403_

ACCOUNT NUMBER

### SINGLE STOCK FUTURES

Would you like the ability to trade Securities Futures?  YES [ ]  NO [✓]

Have you received and understand the Securities Futures Risk Disclosure Statement?  YES [✓]  NO [ ]

_____     _____
Signature                                             Date

TO: Delaware Guarantee & Trust Co.

FROM: PTI Securities & Futures L.P.

Pursuant to the Trustee's powers granted under Article 9.1 of the Trust, Delaware Charter Guarantee & Trust Company (DCG) agrees to permit *Debit and Credit Spreads* and *Covered Put Writing* in PTI Securities & Futures L.P. customer accounts trusteed by DCG, subject to the following conditions which PTI Securities & Futures L.P. hereby agrees to accept and be bound by:

1. At all times during the duration of each such option or position, the account will maintain a cash balance sufficient to cover any potential obligations which are a result of such option or position.
2. PTI Securities & Futures L.P. will closely monitor their customer's trading and if at any time the account balance falls 35% below their initial capital, PTI will place a moratorium on their trading.
3. PTI Securities & Futures L.P. hereby indemnifies and holds harmless Delaware Charter Guarantee & Trust Company against any and all claims, rights, or actions which my accrue against them as a result of this agreement.

In addition, the purchase of "LEAP" call options are permitted in the account subject to condition number three above. Any "LEAP" options must otherwise conform to the requirements of this agreement and Article 9 of the trust.

This permission is granted subject to the aforementioned trust powers and my be revoked by DCG pursuant to those powers upon written or oral notice to PTI Securities & Futures L.P. Any customer subject to this agreement will acknowledge same by signing the release below prior to any trading activity. This permission is exclusive to PTI Securities & Futures L.P. and is automatically revoked if the conditions are not met at all times.

_____       _____
Daniel J. Haugh, President                     Date
PTI Securities LP

_____       _____
Carol Hilty Droge, Vice President           Date
Delaware Charter Guarantee & Trust Co.

The undersigned indemnifies PTI Securities & Futures L.P. and Delaware Charter Guarantee & Trust Company and each of its officers, partners, directors, employees, and agents, from, and hold such persons harmless against, any claims, judgments, surcharges, settlement amounts, or other liabilities or costs of defense or settlement (including attorney's fees) arising out of or related to any actual or alleged improper or unsuitable actions taken at such individual's instructions in connection with the IRA account established at PTI Securities & Futures L.P.

_____       11/23/2009
Customer Signature                              Date

3605 — 8403



## PTI Securities & Futures L.P.
411 S. Wells Street  Suite 900
Chicago, IL 60607

800.821.4968  www.PTISecurities.com

## TRADING AUTHORIZATION LIMITED TO PURCHASES AND
## SALES OF SECURITIES AND COMMODITIES

The undersigned hereby authorizes _____PTI_____ (whose signature appears below) as his agent and attorney in fact to buy, sell (including short sales) and trade in stocks, bonds and any other securities and/or commodities and/or contracts relating to the same on margin or otherwise in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books.  The undersigned hereby agrees to indemnify and hold you harmless from and to pay you promptly on demand any and all losses arising there from or debit balance due thereon.

In all such purchases, sales or trades you are authorized to follow the instructions of ___ORRIN  C  STEVENS_____ in every respect concerning the undersigned's account with you; and he is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with purchases, sales or trades.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at _____. But such revocation shall not affect any liability in any way resulting from transaction initiated prior to such firm and of any successor firm or firms irrespective of any change or changes at any tine in the personnel thereof for any cause whatsoever, and of the assigns of present firm or any successor firm.

Dated __11/23/2009_____

__DALLAS_____        __TX_____
(city)                                        (state)

Very truly yours,

_Orrin C Stevens_____

SIGNATURE OF AUTHORIZED AGENT

## Gregg Rzepczynski

**From:** Orrin Stevens <orrinjr@sbcglobal.net>
**Sent:** Thursday, February 19, 2015 1:22 PM
**Subject:** Re: pti

Dan,

Thanks for the update.

Please make a wire transfer of $45,780.00 from my account to the account below.

Name: Ernestine Haney
Bank Name: Regions bank
Bank Address: 2948 E Texas St Bossier City, LA 71111
Account Number: 0174636634
Routing Number: 065403626

Email me the form so i can sign and send back for processing.

Thanks
Orrin

---

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5646 / Virus Database: 4284/9145 - Release Date: 02/19/15

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5646 / Virus Database: 4284/9145 - Release Date: 02/19/15



1

Serial #: 433582 printed by dan@ptisecurities.com on 2015-08-03 13:34:34

| Audit Trail [EDT] Username | Event | Comment |
|---|---|---|
| Feb 19 2015 04:47:31PM Global Relay Archive | Imported | Message #433582: Received from Mail Server |

| | |
|---|---|
| **Subject :** | **RE: pti** |
| **From :** | "Dan Haugh" <Dan@ptisecurities.com> |
| **Date :** | **5 months ago** Thu, 19 Feb 2015 16:36:44 -0500 |
| **To :** | "'Orrin Stevens'" <orrinjr@sbcglobal.net> |
| **Attachments :** | DIS REQ.pdf (123KB) |

Attached is the distribution request – also RBC requires you to sign the wiring instructions.

---

**From:** Orrin Stevens [mailto:orrinjr@sbcglobal.net]
**Sent:** Thursday, February 19, 2015 1:22 PM
**To:** Dan Haugh
**Subject:** Re: pti

Dan,

Thanks for the update.

Please make a wire transfer of $45,780.00 from my account to the account below.

Name: Ernestine Haney
Bank Name: Regions bank
Bank Address: 2948 E Texas St Bossier City, LA 71111
Account Number: 0174636634
Routing Number: 065403626

Email me the form so i can sign and send back for processing.

Thanks
Orrin

---

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5646 / Virus Database: 4284/9145 - Release Date: 02/19/15

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5646 / Virus Database: 4284/9145 - Release Date: 02/19/15

EXHIBIT

tabbies®

"C"

58

02/23/2015

Hello

Please make a wire transfer of $45,780.00 from my account to the account below.

Name: Ernestine Haney
Bank Name: Regions bank
Bank Address: 2948 E Texas St Bossier City, LA 71111
Account Number: 0174636634
Routing Number: 065403626

Thanks

Orrin C Stevens





RBC Correspondent Services

|  | Account Number | 892-00287 |
|---|---|---|
|  | Rep ID | Alternate Branch |

## DISTRIBUTION REQUEST – IRA/SEP/ROTH/SIMPLE

This form should not be used for same name IRA to IRA transfers.

### SECTION ONE: CLIENT INFORMATION

Name and Address
Orrin C Stevens
4016 Candlenut Ln
Dallas TX 75244

Check issued via:

☐ Minneapolis   ☐ At firm printer _____

| SSN ▮▮▮▮▮▮ | Date of Birth 7/17/1969 |
|---|---|

### SECTION TWO: TYPE OF DISTRIBUTION

☐ **Premature:** Client is under age 59½. This distribution may be subject to an IRS 10% premature distribution tax.

☐ **Normal:** Client has attained age 59½.

☐ **Required Minimum Distribution**

☐ **Substantially Equal Payments – Calculation Method:**   ☐ Life Expectancy   ☐ Annuitization   ☐ Amortization

☐ **Disability:** Within the meaning of Section 72(m)(7) of the Internal Revenue Code.

☐ **Death of Account Owner:** A death certificate must be attached.
Beneficiary's Name _____
Beneficiary's Social Security Number _____   New Beneficiary Account Number _____

☐ **Distribution to Beneficiary** (In decedent account status.)

☐ **Transfer Due to Divorce:** Attach the relevant portions of the divorce decree.

☐ **Simple IRA:** Distribution prior to completion of 2 years in the Plan.

☐ **Conversion to Roth**

☐ **Recharacterization:**
Date of Deposit _____   Tax year for which contribution was made _____
Amount of Recharacterization _____

☐ **Reverse Direct Rollover:** Name of Plan _____
Address _____
Account Number _____   Attention _____

☐ **Roth Qualified:** Client meets the 5-year holding period and one of the following applies (select one):
☐ Client is 59 ½   ☐ Distribution to beneficiary (in decedent account status)   ☐ Client is disabled

### SECTION THREE: AMOUNT OF DISTRIBUTION

**Lump Sum** (Account closure; appropriate fees will be applied.)

☐ **Liquidate all assets** (FA must complete the liquidation in order for RPO to process this request.)

☐ **Distribute all assets in kind**

**Lump Sum** (Account is to remain open; if requested to close at a later date, applicable fees will be assessed.)

☐ **Liquidate all assets** (FA must complete the liquidation in order for RPO to process this request.)

☐ **Distribute all assets in kind**

**Partial Payment** (Indicate gross amount to be distributed. Any taxes will be deducted from this amount.)

☐ **Distribute cash in the amount of $** _____

☐ **Distribute shares**

| # of shares/bonds _____ | security # _____ | name of security _____ |
|---|---|---|
| # of shares/bonds _____ | security # _____ | name of security _____ |
| # of shares/bonds _____ | security # _____ | name of security _____ |
| # of shares/bonds _____ | security # _____ | name of security _____ |

☐ **Other:** Indicate payout type _____

RBC Correspondent Services, a division of RBC Capital Markets, LLC, Member NYSE/FINRA/SIPC.   R_UIDI (01/12)

55
A 2


RBC Correspondent Services

Account Number _____
Rep ID _____ Alternate Branch _____

# DISTRIBUTION REQUEST – IRA/SEP/ROTH/SIMPLE

## SECTION FOUR: METHOD OF DISTRIBUTION

I authorize RBC Correspondent Services, a division of RBC Capital Markets, LLC ("RBC CM"), Member NYSE/FINRA/SIPC, to distribute the funds requested as follows:

☐ Installments: Frequency: ☐ Monthly ☐ Biweekly (1st & 15th only) ☐ Quarterly ☐ Semiannually ☐ Annually

    Beginning on: Month _____ Day _____

    ☐ New ☐ Amended

☐ Deposit to RBC CM account number: _____

☐ ACH Profile Number: _____

☑ Wire Funds (Attach Instructions) _____

☐ Alternate Address _____

☐ Single Payment: A check will be issued for this distribution and forwarded to the address of record unless otherwise noted.

## SECTION FIVE: WITHHOLDING ELECTION

Distributions you receive from your retirement account are subject to federal income tax withholding unless you elect not to have withholding apply. If you elect withholding, government regulations require the rate to be no less than 10%. If you elect not to have withholding apply, you are still liable for payment of federal income tax on your distribution(s). You may be responsible for payment of estimated tax. In addition, you may incur penalties under estimated tax rules if your withholding and estimated tax payments are not sufficient. Withholding is merely a method of paying taxes that you owe; therefore, it does not change your total tax liability. This section will remain in effect until RBC CM receives written notification to exchange the method of withholding.

Please note that if you reside in a state that requires state income tax withholding, RBC Capital Markets, LLC will comply with all such mandates. This may affect the balance that is distributed to you.

☑ I elect not to have federal income tax withheld from my payment(s).

☐ I elect to have _____ % or $ _____ withheld from my distribution(s) as a prepayment of federal income tax.

☐ I elect not to have state income tax withheld from my payment(s).

☐ I elect to have _____ % or $ _____ withheld from my distribution(s) as a prepayment of state income tax.
    State for withholding _____

## SECTION SIX: SIGNATURES

I authorize and direct RBC CM to withdraw funds from this account and to disburse them according to the above instructions. I understand that RBC CM may accept verbal instruction(s) from me to change the amount, frequency or payment method of the distribution, however RBC CM may, in its sole discretion, require that certain modifications be received in writing. I certify that this withdrawal is made for the reason indicated above, that this withdrawal request complies with the provisions of the Individual Retirement Account Agreement, and that this withdrawal request satisfies the requirements of the Internal Revenue Code. By authorizing the payment above, I acknowledge constructive receipt of the funds from my retirement account. I acknowledge that I may be liable for any taxes (including, without limitation, tax on ordinary income) and penalties imposed by the Internal Revenue Service (IRS) arising from or related to the amount distributed from my IRA to a third party. I agree to hold harmless RBC Capital Markets, LLC (as custodian) for following my instructions for payment to a third party or for accepting changes to the above referenced instructions. I understand that the distribution of assets out of my IRA to a third party will be reported to the IRS under my Social Security Number.

| Client Signature | Date | Print Name |
|---|---|---|
| *Orrin Stevens* | 09/23/2015 | Orrin C Stevens |

## SECTION SEVEN: CORRESPONDENT FIRM ATTESTATION

In order to be processed to a third party, this request form must be signed by a Firm Authorized Signer or notarized. The undersigned Firm Authorized Signer hereby represents and warrants that the signature(s) of the person(s) signing above on behalf of the account is/are genuine and that such signer(s) is/are an authorized party with the capacity and authority to bind the account, and agrees that the Firm will indemnify RBC CM for any action taken in reliance on the above representations and warranties.

| Firm Authorized Signer Signature | Date | Firm Authorized Signer Name (please print) |
|---|---|---|
| | | |

Place notary here, if required.


55
A3

03/04/2015

Hello,

Please make a wire transfer of $45,780.00 from my account to the account below.

Name: Nellie Burkett
Bank Name: First National Bank & Trust
Bank Address: 111 S Main St Atmore, AL 36502
Account Number: 69713301
Routing Number: 062104520

Thanks

Orrin Customers

EXHIBIT

"E"



**RBC Correspondent Services**

Account Number  892-00287 _____

Rep ID _____  Alternate Branch _____

# DISTRIBUTION REQUEST – IRA/SEP/ROTH/SIMPLE
This form should not be used for same name IRA to IRA transfers.

## SECTION ONE: CLIENT INFORMATION

Name and Address
Orrin C Stevens
4016 Candlenut Ln
Dallas TX 75244

Check issued via:
☐ Minneapolis    ☐ At firm printer _____

SSN ▮▮▮▮▮▮▮▮    Date of Birth  7/17/1969

## SECTION TWO: TYPE OF DISTRIBUTION

☐ **Premature:** Client is under age 59½. This distribution may be subject to an IRS 10% premature distribution tax.

☐ **Normal:** Client has attained age 59½.

☑ **Required Minimum Distribution**

☐ **Substantially Equal Payments** – Calculation Method:    ☐ Life Expectancy  ☐ Annuitization  ☐ Amortization

☐ **Disability:** Within the meaning of Section 72(m)(7) of the Internal Revenue Code.

☐ **Death of Account Owner:** A death certificate must be attached.
Beneficiary's Name _____
Beneficiary's Social Security Number _____  New Beneficiary Account Number _____

☐ **Distribution to Beneficiary** (In decedent account status.)

☐ **Transfer Due to Divorce:** Attach the relevant portions of the divorce decree.

☐ **Simple IRA:** Distribution prior to completion of 2 years in the Plan.

☐ **Conversion to Roth**

☐ **Recharacterization:**
Date of Deposit _____  Tax year for which contribution was made _____
Amount of Recharacterization _____

☐ **Reverse Direct Rollover:** Name of Plan _____
Address _____
Account Number _____  Attention _____

☐ **Roth Qualified:** Client meets the 5-year holding period and one of the following applies (select one):
☐ Client is 59 ½  ☐ Distribution to beneficiary (in decedent account status)  ☐ Client is disabled

## SECTION THREE: AMOUNT OF DISTRIBUTION

Lump Sum (Account closure; appropriate fees will be applied.)

☐ **Liquidate all assets** (FA must complete the liquidation in order for RPO to process this request.)

☐ **Distribute all assets in kind**

Lump Sum (Account is to remain open; if requested to close at a later date, applicable fees will be assessed.)

☐ **Liquidate all assets** (FA must complete the liquidation in order for RPO to process this request.)

☐ **Distribute all assets in kind**

Partial Payment (Indicate gross amount to be distributed. Any taxes will be deducted from this amount.)

☐ **Distribute cash in the amount of $** _____

☐ **Distribute shares**

| # of shares/bonds | security # | name of security |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

☐ **Other:** Indicate payout type _____

49/82



RBC Correspondent Services

Account Number _____

Rep ID _____ Alternate Branch _____

# DISTRIBUTION REQUEST – IRA/SEP/ROTH/SIMPLE

## SECTION FOUR: METHOD OF DISTRIBUTION

I authorize RBC Correspondent Services, a division of RBC Capital Markets, LLC ("RBC CM"), Member NYSE/FINRA/SIPC, to distribute the funds requested as follows:

☐ **Installments:** Frequency: ☐ Monthly ☐ Biweekly (1st & 15th only) ☐ Quarterly ☐ Semiannually ☐ Annually

  **Beginning on:** Month_____ Day_____

  ☐ New ☐ Amended

☐ **Deposit to RBC CM account number:** _____

☐ **ACH Profile Number:** _____

☑ **Wire Funds (Attach Instructions)** _____

☐ **Alternate Address** _____

☐ **Single Payment:** A check will be issued for this distribution and forwarded to the address of record unless otherwise noted.

## SECTION FIVE: WITHHOLDING ELECTION

Distributions you receive from your retirement account are subject to federal income tax withholding unless you elect not to have withholding apply. If you elect withholding, government regulations require the rate to be no less than 10%. If you elect not to have withholding apply, you are still liable for payment of federal income tax on your distribution(s). You may be responsible for payment of estimated tax. In addition, you may incur penalties under estimated tax rules if your withholding and estimated tax payments are not sufficient. Withholding is merely a method of paying taxes that you owe; therefore, it does not change your total tax liability. This section will remain in effect until RBC CM receives written notification to exchange the method of withholding.

Please note that if you reside in a state that requires state income tax withholding, RBC Capital Markets, LLC will comply with all such mandates. This may affect the balance that is distributed to you.

☑ I elect not to have federal income tax withheld from my payment(s).

☐ I elect to have_____% or $_____ withheld from my distribution(s) as a prepayment of federal income tax.

☐ I elect not to have state income tax withheld from my payment(s).

☐ I elect to have_____% or $_____ withheld from my distribution(s) as a prepayment of state income tax.

  State for withholding_____

## SECTION SIX: SIGNATURES

I authorize and direct RBC CM to withdraw funds from this account and to disburse them according to the above instructions. I understand that RBC CM may accept verbal instruction(s) from me to change the amount, frequency or payment method of the distribution, however RBC CM may, in its sole discretion, require that certain modifications be received in writing. I certify that this withdrawal is made for the reason indicated above, that this withdrawal request complies with the provisions of the Individual Retirement Account Agreement, and that this withdrawal request satisfies the requirements of the Internal Revenue Code. By authorizing the payment above, I acknowledge constructive receipt of the funds from my retirement account. I acknowledge that I may be liable for any taxes (including, without limitation, tax on ordinary income) and penalties imposed by the Internal Revenue Service (IRS) arising from or related to the amount distributed from my IRA to a third party. I agree to hold harmless RBC Capital Markets, LLC (as custodian) for following my instructions for payment to a third party or for accepting changes to the above referenced instructions. I understand that the distribution of assets out of my IRA to a third party will be reported to the IRS under my Social Security Number.

| Client Signature | Date | Print Name |
|---|---|---|
| *Orrin Stevens* | 03/04/2015 | Orrin C Stevens |

## SECTION SEVEN: CORRESPONDENT FIRM ATTESTATION

In order to be processed to a **third party**, this request form must be signed by a Firm Authorized Signer or notarized. The undersigned Firm Authorized Signer hereby represents and warrants that the signature(s) of the person(s) signing above on behalf of the account is/are genuine and that such signer(s) is/are an authorized party with the capacity and authority to bind the account, and agrees that the Firm will indemnify RBC CM for any action taken in reliance on the above representations and warranties.

| Firm Authorized Signer Signature | Date | Firm Authorized Signer Name (please print) |
|---|---|---|
|  |  |  |

Place notary here, if required.

49
A3

03/10/2015

Hello,

Please make a wire transfer of $53,980.00 from my account to the account below.

Name: Nellie Burkett
Bank Name: First National Bank & Trust
Bank Address: 111 S Main St Atmore, AL 36502
Account Number: 69713301
Routing Number: 062104520

Thanks

Orrin C Stevens

EXHIBIT
"F"

46
A-3



RBC Correspondent Services

Account Number    892-00287

Rep ID _____    Alternate Branch _____

# DISTRIBUTION REQUEST – IRA/SEP/ROTH/SIMPLE
This form should not be used for same name IRA to IRA transfers.

## SECTION ONE: CLIENT INFORMATION

Name and Address
   Orrin C Stevens
   4016 Candlenut Ln
   Dallas TX 75244

Check issued via:
☐ Minneapolis    ☐ At firm printer _____

SSN ▮▮▮▮▮▮▮▮    Date of Birth  7/17/1969

## SECTION TWO: TYPE OF DISTRIBUTION

☐ **Premature:** Client is under age 59½. This distribution may be subject to an IRS 10% premature distribution tax.

☐ **Normal:** Client has attained age 59½.

☑ **Required Minimum Distribution**

☐ **Substantially Equal Payments** – Calculation Method:   ☐ Life Expectancy  ☐ Annuitization  ☐ Amortization

☐ **Disability:** Within the meaning of Section 72(m)(7) of the Internal Revenue Code.

☐ **Death of Account Owner:** A death certificate must be attached.
   Beneficiary's Name _____
   Beneficiary's Social Security Number _____   New Beneficiary Account Number _____

☐ **Distribution to Beneficiary** (In decedent account status.)

☐ **Transfer Due to Divorce:** Attach the relevant portions of the divorce decree.

☐ **Simple IRA:** Distribution prior to completion of 2 years in the Plan.

☐ **Conversion to Roth**

☐ **Recharacterization:**
   Date of Deposit _____   Tax year for which contribution was made _____
   Amount of Recharacterization _____

☐ **Reverse Direct Rollover:** Name of Plan _____
   Address _____
   Account Number _____   Attention _____

☐ **Roth Qualified:** Client meets the 5-year holding period **and** one of the following applies (select one):
   ☐ Client is 59 ½   ☐ Distribution to beneficiary (in decedent account status)   ☐ Client is disabled

## SECTION THREE: AMOUNT OF DISTRIBUTION

Lump Sum (Account closure; appropriate fees will be applied.)

☐ **Liquidate all assets** (FA must complete the liquidation in order for RPO to process this request.)

☐ **Distribute all assets in kind**

Lump Sum (Account is to remain open; if requested to close at a later date, applicable fees will be assessed.)

☐ **Liquidate all assets** (FA must complete the liquidation in order for RPO to process this request.)

☐ **Distribute all assets in kind**

Partial Payment (Indicate gross amount to be distributed. Any taxes will be deducted from this amount.)

☐ **Distribute cash in the amount of** $ _____

☐ **Distribute shares**

   # of shares/bonds _____   security # _____   name of security _____
   # of shares/bonds _____   security # _____   name of security _____
   # of shares/bonds _____   security # _____   name of security _____
   # of shares/bonds _____   security # _____   name of security _____

☐ **Other:** Indicate payout type _____

46 A1


RBC Correspondent Services

Account Number _____

Rep ID __ _____ Alternate Branch _____

## DISTRIBUTION REQUEST – IRA/SEP/ROTH/SIMPLE

### SECTION FOUR: METHOD OF DISTRIBUTION

I authorize RBC Correspondent Services, a division of RBC Capital Markets, LLC ("RBC CM"), Member NYSE/FINRA/SIPC, to distribute the funds requested as follows:

☐ **Installments:** Frequency: ☐ Monthly ☐ Biweekly (1st & 15th only) ☐ Quarterly ☐ Semiannually ☐ Annually

 Beginning on: Month _____ Day _____

 ☐ New ☐ Amended

☐ **Deposit to RBC CM account number:** _____

☐ **ACH Profile Number:** _____

☑ **Wire Funds (Attach Instructions)** _____

☐ **Alternate Address** _____

☐ **Single Payment:** A check will be issued for this distribution and forwarded to the address of record unless otherwise noted.

### SECTION FIVE: WITHHOLDING ELECTION

Distributions you receive from your retirement account are subject to federal income tax withholding unless you elect not to have withholding apply. If you elect withholding, government regulations require the rate to be no less than 10%. If you elect not to have withholding apply, you are still liable for payment of federal income tax on your distribution(s). You may be responsible for payment of estimated tax. In addition, you may incur penalties under estimated tax rules if your withholding and estimated tax payments are not sufficient. Withholding is merely a method of paying taxes that you owe; therefore, it does not change your total tax liability. This section will remain in effect until RBC CM receives written notification to exchange the method of withholding.

Please note that if you reside in a state that requires state income tax withholding, RBC Capital Markets, LLC will comply with all such mandates. This may affect the balance that is distributed to you.

☑ I elect **not** to have federal income tax withheld from my payment(s).

☐ I elect to have_____% or $_____ withheld from my distribution(s) as a prepayment of federal income tax.

☐ I elect **not** to have state income tax withheld from my payment(s).

☐ I elect to have_____% or $_____ withheld from my distribution(s) as a prepayment of state income tax.

 State for withholding_____

### SECTION SIX: SIGNATURES

I authorize and direct RBC CM to withdraw funds from this account and to disburse them according to the above instructions. I understand that RBC CM may accept verbal instruction(s) from me to change the amount, frequency or payment method of the distribution, however RBC CM may, in its sole discretion, require that certain modifications be received in writing. I certify that this withdrawal is made for the reason indicated above, that this withdrawal request complies with the provisions of the Individual Retirement Account Agreement, and that this withdrawal request satisfies the requirements of the Internal Revenue Code. By authorizing the payment above, I acknowledge constructive receipt of the funds from my retirement account. I acknowledge that I may be liable for any taxes (including, without limitation, tax on ordinary income) and penalties imposed by the Internal Revenue Service (IRS) arising from or related to the amount distributed from my IRA to a third party. I agree to hold harmless RBC Capital Markets, LLC (as custodian) for following my instructions for payment to a third party or for accepting changes to the above referenced instructions. I understand that the distribution of assets out of my IRA to a third party will be reported to the IRS under my Social Security Number.

| Client Signature | Date | Print Name |
|---|---|---|
| *Orrin Stevens* | 03/10/2015 | Orrin C Stevens |

### SECTION SEVEN: CORRESPONDENT FIRM ATTESTATION

In order to be processed to a **third party**, this request form must be signed by a Firm Authorized Signer or notarized. The undersigned Firm Authorized Signer hereby represents and warrants that the signature(s) of the person(s) signing above on behalf of the account is/are genuine and that such signer(s) is/are an authorized party with the capacity and authority to bind the account, and agrees that the Firm will indemnify RBC CM for any action taken in reliance on the above representations and warranties.

| Firm Authorized Signer Signature | Date | Firm Authorized Signer Name (please print) |
|---|---|---|
| | | |

Place notary here, if required.

*46*
*A 2*

## PTI Securities

**From:** "Orrin Stevens" <orrinjr@sbcglobal.net>
**To:** "Dan Haugh" <Dan@ptisecurities.com>
**Sent:** Tuesday, March 10, 2015 3:37 PM
**Subject:** Re: Hi Dan

Dan,

I will call and confirm.

Would get back to you tomorrow.

Thanks for the update.
Orrin

On Tuesday, March 10, 2015 4:33 PM, Dan Haugh <Dan@ptisecurities.com> wrote:

Orin,

I was just notified by RBC that the wire was rejected by the receiving bank,  RBC inquired but the bank did not give them a reason.

This is a new one for me, but I believe that the next step would be for you to contact that bank and ask them.

Dan

---

**From:** Orrin Stevens [mailto:orrinjr@sbcglobal.net]
**Sent:** Tuesday, March 10, 2015 1:04 PM
**To:** Dan@ptisecurities.com
**Subject:** Hi Dan

Dan,

What is the status of the transfer?

Thanks
Orrin
No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5751 / Virus Database: 4299/9269 - Release Date: 03/10/15

---

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5751 / Virus Database: 4299/9268 - Release Date: 03/10/15

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2015.0.5751 / Virus Database: 4299/9269 - Release Date: 03/10/15



EXHIBIT
"G"

*1 of 2*

3/11/2015

Received: from postin02.mbox.net [165.212.64.15] by cm01.cms.usa.net via mtad
(C8.MAIN.3.82G)
     with ESMTP id 361TcJomc4240M01; Tue, 10 Mar 2015 14:12:02 -0000
Return-Path: <orrinjr@sbcglobal.net>
Received: from gws5.mbox.net (gws5.mbox.net [165.212.64.89])
     by postin02.mbox.net (Postfix) with ESMTP id 3l1dds3TgrzfjH2x
     for <dan@ptisecurities.com>; Tue, 10 Mar 2015 14:12:01 +0000 (UTC)
X-USANET-Received: from emd1.mbox.net [165.212.64.8] by gws5.mbox.net via mtad
(C8.MAIN.4.00W)
     with ESMTP id 063TcJoL34112Ms5; Tue, 10 Mar 2015 14:11:54 -0000
X-USANET-Routed: 1 gwsin-bmrelay Q:bmrelay
X-USANET-Routed: 10 gwsin-externalarchive C:gwsarchive:625
ptisecurities.com@mailarchivespool1.globalrelay.com
X-USANET-Routed: 2 gwsin-vs Q:bmrelayvs
X-USANET-Routed: 100 IN-RELAY R:gwsin-int:650
X-USANET-GWS2-Tenant: ptisecurities.com
X-USANET-GWS2-Tagid: PTIS
Received: from omp1005.access.mail.gq1.yahoo.com [216.39.60.234] by emd1.mbox.net
via smtad (C8.MAIN.4.01M)
     with ESMTPS id XID498TcJoL30947Xd1; Tue, 10 Mar 2015 14:11:54 -0000
X-USANET-Source: 216.39.60.234  IN  orrinjr@sbcglobal.net
omp1005.access.mail.gq1.yahoo.com TLS
X-USANET-MsgId: XID498TcJoL30947Xd1
Received: (qmail 29525 invoked by uid 1000); 10 Mar 2015 14:11:53 -0000
Received: (qmail 67457 invoked by uid 60001); 10 Mar 2015 14:11:53 -0000
DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=sbcglobal.net; s=s1024;
t=1425996712; bh=XxwfNInRw/FP8EQTjFH1jRHm0+6gM4J5H59q96fz6qc=;
h=Message-ID:Date:From:Reply-To:Subject:To:MIME-Version:Content-Type;
b=LQd9CX+lkGf+VIJdyn6n+ssvbXJOYmet/PGyPi89PsCBXDUslqX/D6Jx1K+gvYx9O
aeZuffxONotd3VDZGEUVwEnT0DfBejilUxwVspaK1sopP3jnl4MxZPHKjQuyb4z+fx+
4OPk6O2yTfJkQpvDhbZvZPDZQYeC6pgALWkFHdk=
X-YMail-OSG: 4Vn.m0gVM1lD5hIncohhPicBejXmc0ebJ4_bB3uv7Ve0ZzK
efKg5zrZsiGA2t5L6czEgFV05oizYLG9u0G5S0H_vI0R5ojvB9eK1J32O8x4
uk6JMmzADjJaX53fU_ktDcjPloZ36qETHw1e.ydqRPWD3hkLZvuetdqTcA24
ijXJl2sgdJuKzr9PmKzOaInzMDjKPzkrR9jFvqXsC.sbZwxo2RcUmVxb2vwQ
fpntqHsmHJVG43ee5sSnleljIK7P7o9qrZ8dt2LIOqULptdoe3mq67GIkiwk
GDl_9aZqE..GOrrCykHIZzFosmIvLu2jPmRyPB1mfLLrsHkeJymSuxM.i6XC
xrjMon36wFa1vcVN2xmr64RwCWbPyhFXh4MM6BEfY4cWFMGWMrXaxCPxvpHA
jQu14hDr87CW8KNxibQrBtWdx30if4VFQwZoXM.9kuLIfy3bB3EEnbC3d6vP
B0Jfdgz8YasAOwd4OABW1E2TbKJvCDeRIv9e0dDmIO.W84ECud57OZiHp663
AV8pBCh54cN2OayaQS56eVC0_nnt548faRkMi4UlWd40aAAYpMGGU5lCI.Qj
5EGoDBLepmdGQ5mDCJgEFjHLuqHMASK0QNJhc
Received: from [74.195.179.121] by web185301.mail.gq1.yahoo.com via HTTP; Tue, 10
Mar 2015 07:11:52 PDT
X-Rocket-MIMEInfo:
002.001,SGkgRGFuLAoKQXR0YWNoZWQgaXMgYSBuZXcgd2lyaW5nIGluc3RydW

N0aW9uIGFuZCBzaWduZWQgY29weSBvZiB0aGUgZm9ybS4KCktpbmRseSBoYXZl
IGl0IHByb2Nlc3MgYW5kIGVtYWlsIG1lIHRoZSBjb25maXJtYXRpb24gbnVmYmVyI
GFzIHNvb24gYXMgdGhlIHRyYW5zZmVyIGlzIGNvbXBsZXRlC4KClRoYW5rcwp
PcnJpbgoBMAEBAQE-
X-Mailer: YahooMailWebService/0.8.203.740
Message-ID: <1425996712.7378.YahooMailNeo@web185301.mail.gq1.yahoo.com>
Date: Tue, 10 Mar 2015 07:11:52 -0700
From: Orrin Stevens <orrinjr@sbcglobal.net>
Reply-To: Orrin Stevens <orrinjr@sbcglobal.net>
Subject: Hi Dan
To: "Dan@ptisecurities.com" <Dan@ptisecurities.com>
MIME-Version: 1.0
Content-Type: multipart/mixed;
        boundary="-335401467-28045346-1425996712=:7378"
X-Antivirus: AVG for E-mail 2015.0.5751 [4299/9268]
X-AVG-ID: ID100DFD13-445D605D

03/11/2015

Hello,

Please make a wire transfer of $53,980.00 from my account to the account below.

Name: Sharon E Greene
Bank Name: Td Bank
Bank Address: 15 Park Ave, Clifton Park, NY 12065
Account Number: 6251598513
Routing Number: 021302567

Thanks

Orrin C Stevens

EXHIBIT

tabbies

"H"

40 A

 **REGIONS**

Date: 03/03/2015
Time: 9:30 AM
Branch: NORTH BOSSIER

# Transactions

Account Number: ***************6634

Branch of Account: 04101-PIERRE BOSSIER

Current Posted Balance: $ 2,232.22

Outstanding Transactions: $ -23.99

Available Balance $ 2,208.23

Standard Overdraft Coverage / Regions Overdraft Protection: Opt In

| Proc. Date | Amount | Serial Number | Tran Code | Description | D/C | Source | Running Balance |
|---|---|---|---|---|---|---|---|
| 03/02/15 | 4.37 | 1016219932 | 0040 | PIZZA HUT 31660 5812 | D | 0000 | 2,232.22 |
| 03/02/15 | 9.25 | 1016219934 | 0040 | SONIC DRIVE IN 5814 | D | 0000 | 2,236.59 |
| 03/02/15 | 9.99 | 1023868789 | 0040 | HOME TECH SUPPO 7375 | D | 0000 | 2,245.84 |
| 03/02/15 | 14.95 | 1016219928 | 0143 | INF*IDENTITYSMA 8699 | D | 0000 | 2,255.83 |
| 03/02/15 | 15.54 | 1023868787 | 0040 | CAPTAIN D S - B 5812 | D | 0000 | 2,270.78 |
| 03/02/15 | 19.95 | 1016219930 | 0143 | INF*FREEPHONETR 8699 | D | 0000 | 2,286.32 |
| 03/02/15 | 25.27 | 1011516896 | 0155 | SHELL Service 5542 | D | 0000 | 2,306.27 |
| 03/02/15 | 45.27 | 1011415280 | 0155 | WM SUPERCENTER 5411 | D | 0000 | 2,331.54 |
| 03/02/15 | 138.17 | 1030664961 | 0155 | Wal-Mart Super 5411 | D | 0000 | 2,376.81 |
| 03/02/15 | 1,320.00 | 1030610201 | 0155 | WM SUPERCENTER 5411 | D | 0000 | 2,514.98 |
| 03/02/15 | 3,780.00 | 3606 | 0052 | TELLER CASHED CHECK | D | 0007 | 3,834.98 |
| 03/02/15 | 3,855.60 | 1011402916 | 0155 | Wal-Mart Super 5411 | D | 0000 | 7,614.98 |
| 02/27/15 | 17.68 | 8010404347 | 0040 | TA MOLLYS OF BO 5812 | D | 0000 | 11,470.58 |
| 02/27/15 | 24.40 | 8010404345 | 0040 | CHILI S BOSSIER 5812 | D | 0000 | 11,488.26 |
| 02/27/15 | 44.15 | 8015541230 | 0155 | MERLE NORMAN 5977 | D | 0000 | 11,512.66 |
| 02/27/15 | 63.47 | 8015500260 | 0155 | BROOKSHIRES 57 5411 | D | 0000 | 11,556.81 |
| 02/27/15 | 100.00 | 3861 | 0070 | CHECK | D | 0007 | 11,620.28 |
| 02/27/15 | 10,000.00 | 3605 | 0070 | CHECK | D | 0007 | 11,720.28 |
| 02/27/15 | 10,000.00 | 3604 | 0070 | CHECK | D | 0007 | 21,720.28 |
| 02/26/15 | 6.53 | 7016637374 | 0155 | BELK STIRLING 5311 | D | 0000 | 31,720.28 |
| 02/26/15 | 40.00 | | 0052 | TELLER CASHED CHECK | D | 0007 | 31,726.81 |
| 02/26/15 | 126.45 | 7012220981 | 0040 | THE HARTFORD/AA 6300 | D | 0000 | 31,766.81 |
| 02/26/15 | 15,000.00 | 3660 | 0070 | CHECK | D | 0007 | 31,892.26 |
| 02/26/15 | 15,000.00 | 3658 | 0052 | TELLER CASHED CHECK | D | 0007 | 46,892.26 |
| 02/26/15 | 656.20 | | 0020 | DEPOSIT - THANK YOU | C | 0007 | 61,892.26 |
| 02/26/15 | 15,000.00 | | 0020 | DEPOSIT - THANK YOU | C | 0007 | 61,236.06 |
| 02/24/15 | 57.77 | 5009781293 | 0155 | BROOKSHIRES 17 5411 | D | 0000 | 46,236.06 |
| 02/24/15 | 100.00 | 3656 | 0070 | CHECK | D | 0007 | 46,293.83 |
| 02/23/15 | 9.83 | 4016203248 | 0040 | LINS KITCHEN 5812 | D | 0000 | 46,393.83 |
| 02/23/15 | 10.55 | 4005279101 | 0155 | DOLLAR GENERAL 5310 | D | 0000 | 46,403.66 |

The pending items listed above do not always post in the order in which the transactions are displayed.

For all your banking needs, please call 1-800-REGIONS (734-4667) or visit us on the internet at www.regions.com.
Thank You For Banking With Regions!

Form: TCTRANS
Updated: 01/14/2015



EXHIBIT

EXHIBIT

"J"



EXHIBIT

"K"